Good morning, Your Honors. May it please the Court, I'm Alison Clare, Assistant Federal Defender, on behalf of Mr. Catlin. The claims of the petition raise a common underlying question, which is whether it was possible for Mr. Catlin, as an African American, to receive a fair trial in Sutter County in 1992 for the murder of a prominent white citizen of Yuba City. Mr. Catlin himself expressed to the trial court before the proceedings began that he did not think he could get a fair trial. And in this Habeas case, he alleges that his counsel provided ineffective assistance by failing to move for a change of venue and failing to make a motion for voir dire of the panel of jurors regarding their racial attitudes. Well, now, with respect to the racial aspects in terms of the jury, this is not a Batson issue. There was a black seated. There were no other – there were no peremptory challenges or anything like that. Correct, Your Honor. The question is whether the court in and of itself had an affirmative duty to raise the issue. The primary issue here is the ineffective assistance of counsel claim. And although there has been no Batson challenge, it's Mr. Catlin's position that given the circumstances of the conditions in the county, the racial demographics, recent events, and the facts of the offense, that his counsel should have sought to question the jurors about their racial attitudes to make sure that there were no prejudices lurking among the jurors that would affect their assessment of the evidence. And I want to emphasize in this regard, and this point applies to both of the ineffective assistance of counsel claims, that because these are IAC claims, the question under the AEDPA is the reasonableness of the state court's denial of relief in light of Strickland v. Washington, not, as Apolli's brief suggests in numerous places, the reasonableness of application of any of the Supreme Court precedents identifying the contours of a due process right to voir dire regarding race or regarding the due process implications of pretrial publicity. I do think those precedents are informative to our analysis in ways that I'll now explain, but the question is the outcome. But don't you have the burden of establishing that it would have made a difference? Yes, under the Strickland prejudice prong. So the question under Strickland is whether a request for voir dire and a motion for change of venue would likely have been granted, and whether the fact that it was not undermines your confidence, the Court's confidence in the outcome of the proceeding. That's a somewhat different formulation of prejudice than we have in a direct claim that pretrial publicity violated due process or that the Court rejected a request, not made in this case, to conduct the voir dire. And following up on that point, when we look at the issue of voir dire of the jury, both parties have briefed the seminal Supreme Court cases that deal with due process and when a court is required to grant such a request. I think that those cases are informative because they provide the legal background that counsel should have been aware of to realize that there were important constitutional issues at stake here. Therefore, they go to reasonableness. Also, we've argued in the brief that because of the circumstances of this case, the Court would have been obliged under Restaino v. Ross to grant the request. But even if this Court disagrees with me, there's a second point not made in the briefs that I'd like to address. In Rosales-Lopez v. United States, which is the case that extended Restaino v. Ross articulated the due process principle that the Court must permit inquiry into the racial attitudes of jurors when there's a significant likelihood on the facts of the case that racial prejudice will infect the proceedings. Rosales-Lopez expanded that to include ethnicity as well as race. But Rosales-Lopez was a direct appeal in a Federal criminal case. And it had two separate holdings. It affirmed the Restaino due process standard, which, again, is not directly applicable here since that's not our claim. It then had another holding, also not directly applicable, but I'll explain why I think it's important. And that is the Supreme Court said the Restaino standard is the due process minimum, but it's not optimal practice. And in our supervisory role over the Federal courts, we now announce a nonconstitutional rule which will apply in Federal courts that whenever there's a reasonable possibility of race being an issue in the case, it should be asked about. Now, clearly, that rule didn't apply. Although had these events, the offense here, been committed on the nearby Beale Air Force Base instead of in downtown Yuba City, that rule would have applied and Mr. Catlin would have been entitled to that questioning. The point is reasonableness under Strickland. And given the fact that the Supreme Court itself over ten years before this case gave a very good reasoned explanation why it is important, even if not constitutionally required, to inquire in any case where there is a violent interracial crime, the Supreme Court specifically said there is always a reasonable possibility of racial prejudice if the crime is one of violence and the victim and the accused are of different races. So we did have a reasonable possibility in this case, at the very least. And my view is that that reasonable possibility is enough to have given counsel the obligation in terms of reasonable performance to raise the issue. And it also increases the likelihood that the request would have been granted even if you reject my first line of argument, which is that the Court would have been compelled under Restaino to permit the questioning. The same type of analysis I think applies on the change of venue motion. We have not claimed that Mr. Catlin was denied due process, as the Petitioner had alleged in Harris v. Pulley, by the pretrial publicity, but that a change of venue should have been sought on numerous grounds. The pretrial publicity is one of them. The other are the racial issues. And also simply the prominence of the victim in the community. This is a very small, close-knit community. The entire jury voir dire is included in tab 4 of the excerpts of record. And if you even skim through that, you'll see that a vast majority of the jurors, potential jurors, knew various witnesses, were familiar with the Winship family. It's a very close-knit community, and those matters were inquired into. There were – there was one prospective juror who was dismissed for cause because she admitted that her closeness to the Winship family would prevent her from being impartial. Another couple of jurors were excused on that grounds by the defense. But the point is that in – by trying it in a community where everyone in town knew of the Winships and their importance, and where so many people had personal connections, it's impossible to resist the conclusion that this would have had some effect, at least to the extent that – The standard of actual bias? You have to show actual bias? That is the standard in a claim that due process was violated by the publicity. But that's not the claim here. It's ineffective assistance for failing to make a venue motion. So if counsel was unreasonable in not making the venue motion, for which there was absolutely no downside – and in fact, I'd like to just supplement my citations to the record to point out that pretrial, Mr. Tibbetts did specifically tell the judge he was going to move for a venue change based on the publicity, and he did not. That's at the Appellee's Supplemental Excerpts, tab 2, page 5 of the reporter's transcript. But in any case, the prejudice from counsel's omission to follow through and make that motion is measured by whether the motion would likely have been granted. And I've briefed California's Martinez factors in the opening brief at page 22. I think that all those factors are satisfied. And then is there a – not a preponderance, but a reasonable possibility, a likelihood under Strickland, of a different outcome if the case had been tried somewhere else? And given the closeness of the community, the number of people who knew and sympathized with the victim, the extent of the publicity – and if you'll indulge me, I want to, for the record, make one more factual correction. The briefs of both parties incorrectly stated that a total of three prospective jurors volunteered, that they not only read the Appeal Democrat regularly, but also recalled the articles. There were five jurors who stated that they recalled articles about the crime. This is all in Appellant's Excerpts, tab 4.  Ms. Jensen stated that the publicity had so convinced her of Mr. Catlin's guilt that she would not be able to set that aside, which is circumstantial evidence of the type of publicity and the effect it had on people. She was excused for cause. Dennis Long is the man who, on two different occasions, volunteered that the publicity  impressed him with how disgusting and offensive the crime was. He was excused by the defense. Clara Friedman was also excused, which left jurors Pearson and Lane on the jury. Why don't we hear from the government? That's a very, very interesting argument you're making, counsel. Thank you, Your Honor. Good morning. May it please the Court. Janet Neely speaking on behalf of the people of the State of California. Well, the issues in this case are whether or not the State courts unreasonably applied Federal law in finding that the performance of defense counsel in this case was not constitutionally deficient and that, even assuming that it was deficient in some way, there was no prejudice under the second prong of Strickland to the defendant. And I submit that it's very arguable whether his performance was deficient, and I submit that it wasn't. And even if, assuming arguendo, the issue should have been raised in terms of what dearing on race, there's absolutely no evidence of prejudice on the record in this case. Counsel, what's your response to Ms. Clare's very interesting argument that since he earlier indicated that he was going to make a motion for a venue change and then fail to do it, that there's some indication of below-par performance? Well, the attorney did make a motion for removal to Federal court, which was unsuccessful. It may be that, and that was partly because it was the day of dearing, you know, convening the juror, so it was reviewed as too late. But it may be that at that point he had reconsidered whether or not it was beneficial to his client truly to have a different venue, and that he moved for the removal only upon the request of his client. We have no evidence in this record that Mr. Catlin ever requested that his attorney voir dire the jurors on the issue of race. So the only evidence in the record that Mr. Catlin was concerned about racial prejudice was his declaration in support of the removal motion. There's no evidence in the record other than the fact that he originally considered making a change of venue motion that the defense counsel was concerned about the racial bias issue. The change of venue would not have been granted in any event, and maybe defense counsel realized that after considering the issue. How well established is that legal point? Excuse me, Your Honor? How well established is that point, that you're assuming that it would not have been granted in any event? Right. In other words, I agree with counsel that they would have to show, in order to prevail on a stricken claim, that the omitted motion, the change of venue, you know, would have been successful, and as well they have to show there was prejudice in the failure to ask for a change of venue. There's no evidence any juror was racially biased, no indication at all in the record that race was an issue at all in this case. We have simply inferences that because the community was only 25 percent nonwhite, that somehow race should have been raised specifically as a basis for changing venue and for what during the jurors, but I submit to the court that that is not a strong enough ground to merit. Okay. Anything further? I'd submit it if the court has no further questions. No further questions, counsel. Thank you. Ms. Clare, you have some reserved time. I'd like to take issue with opposing counsel's claim that a motion for removal would not have been granted, and the factors that were involved in that motion. But since I misspoke, actually let me first pounce on the removal issue. Counsel indicated that there's, that it was likely, in her view, that defense counsel might have decided that there was no need to really go ahead and try to move this case, because the racial matters perhaps weren't as important as Mr. Catlin believed they were. But the transcript that you have in the excerpts of this supposed removal motion indicates that it was made twice, that the second time, rather, it was made and then supplemented with additional authorities. And the trial judge directly, I don't know if compliment is the right word, but commented that defense counsel had put a lot of work into the motion, had gone and done additional research to support it. Nonetheless, as you all are well aware, one cannot remove a criminal prosecution as one can a diversity action from State court to Federal court. Counsel didn't know what he was doing, and I think there's no other conclusion that can be drawn there. We can infer unreasonableness from the very ineptness of his attempts here. But as to the factors supporting a change of venue, they are the extent and kind of publicity. And here we had publicity that was regular throughout the year between the offense and the trial, that repeatedly emphasized the gruesome nature of the assault, the strength of the evidence against Mr. Catlin, and the fact that there were witnesses, and the prominence of the victim in the community. Well, what about the fact that no less than 10 percent of the actual jurors called in had heard anything about it? And that apparently someone who lived only a block from the crime scene knew nothing about it. Well, that one individual knew nothing about it, and completely apart from the appeal Democrat, because the publicity, again, is only one of the factors that Martinez articulates. Numerous other prospective jurors were aware, if not from reading the appeal Democrat, then from the television or from the talk about town. As I mentioned, a great number of people were familiar with the family, and a number of the prospective jurors indicated that they were aware of what had happened and were offended by it. The nature and gravity of the crime is the second factor, and certainly here this was a special circumstances murder case. Short of a capital charge, there's no more serious and grave crime. And the final factor is the standing, relative standing, of the victim and the accused in the community. And here, again, we could not have a greater disparity. Mr. Catlin was an indigent African-American, although 25 percent of the county was non-white, less than 2 percent were African-American. And Ms. Winship was the elderly grand dame of the community. She was a member of numerous civic organizations. She was well-known in the community. Her family were local pioneers. They had a road and a school named after them. And a great deal of Wadier inquired into the extent to which people were familiar with her. So even those people who didn't have a close family tie, such that it was a personal friend who had been killed and would be affected emotionally in that way, could not have been unaware of the importance of the victim, and that cannot have had the ‑‑ it must have had an effect on the jury. Thank you, counsel.
judges: Hall, O'scannlain Beistline